# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IOENGINE, LLC,<br><br>    *Plaintiff,*<br><br>v.<br><br>PAYPAL HOLDINGS, INC.,<br><br>    *Defendant.* | Civil Action No. 18-452-WCB |
| INGENICO INC.,<br><br>    *Plaintiff,*<br><br>v.<br><br>IOENGINE, LLC,<br><br>    *Defendant.* | Civil Action No. 18-826-WCB |
| IOENGINE, LLC,<br><br>    *Counterclaim Plaintiff,*<br><br>v.<br><br>INGENICO INC.,<br>INGENICO CORP., and<br>INGENICO GROUP, S.A.,<br><br>    *Counterclaim Defendants.* | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the Court are two motions to dismiss. The first, in case number 18-452, is the motion by defendant PayPal Holdings, Inc. ("PayPal"), to dismiss IOENGINE's claims of joint infringement, indirect infringement, and willful infringement on the ground that the complaint fails to allege facts sufficient to plead plausible claims on each of those theories of liability. No. 1:18-cv-452, Dkt. No. 9. The second, in case number 18-826, is the motion by the Ingenico counterclaim defendants (Ingenico Inc., Ingenico Corp., and Ingenico Group S.A.) to dismiss the counterclaims by IOENGINE, LLC, against Ingenico Group S.A. for lack of jurisdiction and to dismiss the counterclaims against all of the counterclaim defendants on the ground that the counterclaims lump the defendants together and fail to give fair notice to any of them. No. 1:18-cv-826, Dkt. No. 26.

In the PayPal case, the Court grants PayPal's motion to dismiss in part and denies it in part. With respect to IOENGINE's theory of joint infringement, the Court holds that the complaint sufficiently alleges facts that plausibly state a claim for relief on that theory. With respect to IOENGINE's theories of indirect infringement and willful infringement, the Court rules that the complaint pleads the requisite knowledge of the patents-in-suit from the date of the complaint. The Court rules that the complaint is otherwise sufficient to support IOENGINE's theories of induced infringement and willful infringement, but that the complaint does not sufficiently allege contributory infringement.

In the Ingenico case, the Court denies the motion to dismiss without prejudice, pending jurisdictional discovery. After jurisdictional discovery, the Ingenico counterclaim defendants will be permitted to renew their motion to dismiss Ingenico Group S.A. as a counterclaim-defendant in this action if they wish to do so, and the parties will be given an opportunity to file supplemental

briefs on the jurisdictional issues. A hearing on the jurisdictional issue will be held if the Court determines that it is necessary. As to the motion of the Ingenico counterclaim defendants to dismiss the counterclaims on the ground that it is unclear from the counterclaims what role each defendant is accused of playing in the alleged acts of infringement, the Court denies the motion.

## I. PAYPAL'S MOTION TO DISMISS

### A. Joint Infringement

PayPal moves to dismiss IOENGINE's claims of joint infringement, contending that IOENGINE's complaint includes no allegations of facts plausibly demonstrating that the acts of a third party are attributable to PayPal such that a single entity is responsible for the alleged infringement.

Proof of joint infringement requires the plaintiff to show that one entity "directs or controls" the other's performance, or that the actors "form a joint enterprise." *Eli Lilly & Co. v. Teva Parenteral Medicines, Inc.*, 845 F.3d 1357, 1364 (Fed. Cir. 2017) (quoting *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 797 F.3d 1020, 1022 (Fed. Cir. 2015) (en banc)). Proof that a defendant engaged in joint infringement by directing and controlling another party's infringing conduct can be shown where the defendant "(1) '*conditions* participation in an activity or receipt of a benefit' upon others' performance of one or more steps of a patented method, and (2) '*establishes the manner or timing* of that performance.'" *Eli Lilly*, 845 F.3d at 1365 (quoting *Akamai*, 797 F.3d at 1023). Proof that a defendant was part of a joint enterprise with another party or group of parties requires a showing of "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose, among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Akamai*, 797 F.3d at 1023.

In order to survive a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), Fed. R. Civ. P., a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the plaintiff pleads factual content that, if taken as true, "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. That standard is not met when a plaintiff provides a "bare averment that he wants relief and is entitled to it." *Twombly*, 550 U.S. at 555 n.3. On the other hand, "the plausibility requirement is not akin to a 'probability requirement at the pleading stage; it simply calls for enough fact[s] to raise a reasonable expectation that discovery will reveal' that the defendant is liable for the misconduct alleged." *Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1380 (Fed. Cir. 2017) (quoting *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1341 (Fed. Cir. 2012)).

PayPal contends that the complaint against it fails to allege sufficient facts under either theory of joint infringement, and that the complaint merely asserts in conclusory fashion that "PayPal has infringed and continues to infringe[] directly (alone or jointly)." Dkt. No. 9, at 9 (citing complaint ¶¶ 26, 109, 189). IOENGINE responds that the complaint contains allegations that PayPal provides software development kits for PayPal infringing products and instructs and encourages customers, Point of Sale Partners ("POS Partners"), and third parties to create applications that enable credit or debit card payments using PayPal card readers. Dkt. No. 16, at 3 (quoting complaint ¶¶ 22, 100, 180, 275). IOENGINE points out that the complaint also contains citations to PayPal's website and to its YouTube video channel, which instruct and encourage end users to use PayPal products in an infringing manner. In particular, IOENGINE notes that the

complaint alleges that PayPal jointly infringes by "orchestrating the infringing use of the PayPal Infringing Products" by PayPal's POS Partners and their mobile payment applications. *Id.* at 17 (citing complaint ¶ 32). PayPal's relationship with its POS Partners, according to IOENGINE, allows a reasonable inference both that PayPal exercises direction or control over its POS Partners and that PayPal and its POS Partners are engaged in a joint enterprise with respect to the acts of alleged infringement.

IOENGINE contends that PayPal documentation referred to in the complaint "direct[s] third party developers on how to create applications that work with the PayPal Infringing Products and . . . control[s] how those partner applications interact with PayPal's systems." *Id.* at 18. According to IOENGINE, the ability of PayPal's POS Partners to interact with the accused PayPal products depends on their use of PayPal's software development kits, which control the performance of the steps of the method claims when the PayPal software is run by the POS Partners. The PayPal software thus establishes the manner and timing of the performance of the claimed method steps by controlling the manner in which the POS Partner interacts with the accused PayPal products to carry out the infringing functionality.

Whether the facts alleged in the complaint will ultimately be determined to be sufficient to constitute "direction or control" by PayPal of the activities of the POS Partners, customers, and third parties is not at issue at this juncture. The pleaded facts are at least sufficient to plausibly assert the required direction or control in light of case law from the Federal Circuit.

The Federal Circuit's decisions in *Akamai* and *Travel Sentry, Inc. v. Tropp*, 877 F.3d 1370 (Fed. Cir. 2017), in particular, are instructive here. In *Akamai*, Limelight was accused of infringing a patent on methods of hosting content and delivering it over the Internet. The evidence showed that Limelight performed several steps of the claimed methods, and that Limelight's customers

performed at least one of the steps, in which the customers "tagged" and "served" the content to be hosted and delivered by Limelight's content delivery network. The en banc Federal Circuit held that substantial evidence supported the jury's determination that Limelight directed or controlled its customers' performance of the remaining method steps. The court observed that "if Limelight's customers wish to use Limelight's product, they must tag and serve content." *Akamai*, 797 F.3d at 1024. That statement was based on evidence that "Limelight requires all of its customers to sign a standard contract" that "delineates the steps customers must perform if they use the Limelight service." *Id.* The Federal Circuit did not recite any evidence that Limelight categorically enforced the contract, but found that Limelight conditioned receipt of the benefit of use of the product based on the contractual promise of the user.

The *Travel Sentry* case involved a claim of joint infringement of a patent directed to an improvement in airline luggage inspection systems. The evidence showed that the accused infringer, Travel Sentry, performed certain steps of the patented method, and that agents of the Transportation Security Administration ("TSA") performed the final two steps. The Federal Circuit held that the evidence was sufficient for a reasonable jury to conclude that the TSA agents' performance of the final two claim steps was attributable to Travel Sentry. The Court explained that "whatever benefits flow to TSA . . . can only be realized if TSA performs the final two claim steps." 877 F.3d at 1382–83. The court, moreover, reaffirmed the conditioning standard articulated in *Eli Lilly*, stating that conditioning does not require the imposition of a "legal obligation" or a "technological prerequisite," nor does it require verification of compliance or a threat of denial of treatment. *Id.* at 1380 (quoting *Eli Lilly*, 845 F.3d at 1366–67).

The decisions in *Akamai* and *Travel Sentry* indicate that the evidence may be sufficient to support an inference of direction or control when (1) the benefits of a particular service or product

can be obtained only if third parties comply with instructions given by the defendant, and (2) the instructions direct the third parties to perform acts that constitute recited steps in the asserted method claims. The allegations in the complaint are sufficient to support an inference that the benefits of the PayPal products can be obtained only if the parties using the products follow the directions given by PayPal. As such, those allegations are sufficient to survive PayPal's motion to dismiss IOENGINE's joint infringement claims.

As for the allegation of joint enterprise, IOENGINE relies on the references in the complaint to the POS Partners as "partners," and in its response to PayPal's motion where IOENGINE refers to the POS Partners as "collaborators." The allegations in the complaint, according to IOENGINE, allow for a reasonable inference that PayPal and its POS Partners have entered into agreements, "have a common purpose and a community of pecuniary interest in that purpose" and that both parties participate in the enterprise. Dkt. No. 16, at 20. The Court does not agree with IOENGINE that the facts pleaded are sufficient to plausibly assert the existence of a joint enterprise in light of the demanding standard set forth by the Federal Circuit in *Akamai*. *See Lyda v. CBS Corp.*, 838 F.3d 1331, 1340 (Fed. Cir. 2016); *Progme Corp. v. Comcast Cable Commc'ns LLC*, Civil Action No. 17-1488, 2017 WL 5070723, at *11 (E.D. Pa. Nov. 3, 2017). At minimum, the complaint fails to satisfy the fourth requirement for a joint enterprise set forth by the *Akamai* court—the presence of "an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Akamai*, 797 F.3d at 1023. While the "joint enterprise" theory is not supported by the complaint, however, the "direction and control" theory is sufficiently supported, and the motion to dismiss is therefore denied with regard to the claims of joint infringement.

## B. Indirect Infringement

PayPal argues that IOENGINE's complaint does not adequately plead either form of indirect infringement—induced infringement or contributory infringement. PayPal's first argument, with regard to both induced infringement and contributory infringement, is that IOENGINE's allegations cannot support liability on either theory for the period of time before the complaint was filed. PayPal argues that the complaint contains no factual allegations from which it could plausibly be inferred that PayPal was aware of the asserted patents prior to the filing of the complaint in this case. Because indirect infringement requires proof of knowledge of the patents assertedly infringed and the acts alleged to constitute infringement, *see Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (induced infringement); *Commil USA, LLC v. Cisco Sys., Inc.*, 135 S. Ct. 1920, 1926 (2015) (contributory infringement), PayPal contends that the complaint cannot support a claim of pre-suit indirect infringement.

IOENGINE does not take issue with PayPal's assertion that the complaint fails to allege sufficient facts from which pre-suit knowledge of the patents could plausibly be inferred. The Court therefore agrees with PayPal that IOENGINE has failed to adequately plead indirect infringement as to PayPal's activities prior to the service of the complaint in this case. *See Evolved Wireless, LLC v. Samsung Elecs. Co.*, No. 15-545, 2016 WL 1019667, at *6 (D. Del. Mar. 15, 2016), report and recommendation adopted, 2016 WL 1381765 (D. Del. Apr. 6, 2016).

As to PayPal's post-suit activities, however, knowledge of the patents was clearly conveyed to PayPal by the service of the complaint.[1] Moreover, the complaint alleges that since

---

[1] Typically, the issue of post-suit knowledge of a patent arises when an amended complaint is filed, so that the allegations of knowledge and continuing infringement refer, at minimum, to the period between the filing of the original complaint and the filing of the amended complaint. In this case, there is no suggestion that the alleged infringement ended at the time the complaint was filed, and it is undisputed that the defendants became aware of the asserted patents no later

receiving notice of the complaint, PayPal has "knowingly" infringed each of the patents, has "knowingly contributed to the infringement of and induced infringement of" those patents, and has done so "with specific intent that the PayPal Infringing Products be used by its customers, Point of Sale Partners, and third parties to directly infringe" the patents. *See* Dkt. No. 1, at ¶¶ 98, 178, 273. Those allegations, in conjunction with the detailed allegations of direct infringement by the defendants, are sufficient to satisfy the knowledge requirement for contributory infringement, as well as the specific intent requirement for induced infringement. *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1355–57 (Fed. Cir. 2018); *Telecomm Innovations, LLC v. Ricoh Co.*, 966 F. Supp. 2d 390, 393 (D. Del. 2013) ("For a post-complaint claim of induced infringement to pass muster under Federal Rule of Civil Procedure 8, plaintiff need only identify the patent-at-issue, the allegedly infringing conduct, the notice afforded by service of the original complaint, and the apparent decision to continue the inducement post-service."); *E.I Du Pont de Nemours & Co. v. Heraeus Holding GmbH*, No. 11-773, 2012 WL 4511258, at *6 (D. Del. Sept. 28, 2012). As to the post-suit period, PayPal does not contest the issue of knowledge and barely mentions the issue of specific intent. Instead, it contends that induced infringement and contributory infringement were not adequately pleaded for other reasons, discussed below.

### 1. Post-Suit Induced Infringement

With regard to the allegations of induced infringement as applied to the post-suit period, PayPal asserts that the complaint fails to recite "culpable conduct, directed to encouraging another's infringement." Dkt. No. 9, at 11 (quoting *Princeton Digital Image Corp. v. Ubisoft Entm't SA*, No. 13-335, 2016 WL 6594076, at *4 (D. Del. Nov. 4, 2016). In fact, the opposite is

---

than the date of service of the complaint. The Court sees no purpose that would be served by the formality of requiring IOENGINE to file an amended complaint in order to be allowed to assert knowledge of the patents during the period following the filing of the original complaint.

true.  The complaint contains detailed allegations regarding PayPal's acts of inducement.  *See* Dkt. No. 1, at ¶¶ 22, 99–105, 179–85, 274–80.  PayPal itself quotes some of those allegations: "Defendant instructs and encourages its customers, Point of Sale Partners, and third parties to use the PayPal Infringing Products in a manner that infringes" the asserted patents, and that "the information and materials provided by PayPal contain detailed descriptions and instructions for using and implementing the functionality claimed" in the asserted patents.  Dkt. No. 9, at 11–12.  PayPal's response to those allegations is to say that they are "unsubstantiated conclusions."  Dkt. No. 9, at 11.

The Court is satisfied that the allegations in the complaint are both factual (not "conclusions," as PayPal asserts) and sufficient to state claims of induced infringement with respect to PayPal's post-suit activities.  The complaint contains detailed references to the directions given by PayPal to its POS Partners and customers as to how to implement its software.  Those references allege that PayPal provides software development kits that instruct and encourage the use of the infringing products, instructional support on its website, information and technical support on third-party platforms, and video instruction on PayPal's YouTube channel.  *See* Dkt. No. 1, at ¶¶ 22, 99–105, 179–85, 274–80.  Those references are amply sufficient to allege that PayPal instructs and encourages others to use the PayPal products in a manner that infringes.  PayPal's response that those detailed allegations are "unsubstantiated" ignores the difference between allegations and proof.[2]

## 2. Post-Suit Contributory Infringement

---

[2] PayPal relies on *McRo, Inc. v. Rockstar Games, Inc.*, Civil Action No. 12-1513, 2014 WL 1051527, at *6 (D. Del. Mar. 17, 2014), for the proposition that allegations of encouragement of direct infringers are insufficient in the absence of allegations that the activities that are encouraged constitute infringement.  In this case, unlike in *McRo*, the complaint contains detailed allegations of infringement by the parties who are allegedly induced by PayPal.

With regard to the allegations of post-suit contributory infringement, PayPal acknowledges that the complaint alleges that PayPal's accused products "are not staple articles or commodities of commerce suitable for substantial non-infringing use." *Id.* at 14 (citing complaint ¶¶ 98, 178, 273; *see also* ¶¶ 26, 109, 189). But PayPal contends that those allegations are insufficient. According to PayPal, the complaint fails to recite facts that plausibly show that the accused products and components have no substantial non-infringing uses. *Id.*

It is true that the burden of proof as to the absence of substantial non-infringing uses falls on the plaintiff. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1363 (Fed. Cir. 2006); *MONEC Holding AG v. Motorola Mobility, Inc.*, 897 F. Supp. 2d 225, 231 (D. Del. 2012). But that does not mean the complaint must recite particular factual evidence showing that the accused products have no substantial non-infringing uses. PayPal's argument would suggest that IOENGINE's complaint should have contained evidence to prove a negative—that the accused products were not staple goods or usable for non-infringing purposes—something that by its nature would be difficult to do. As has been noted, to require the plaintiff to do more than to plead the absence of substantial non-infringing uses would require the plaintiff "to plead a null set under the plausibility standard of *Twombly* and *Iqbal*—that it is impossible to plead with specificity something that does not exist." *Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*, Civil Action No. 14-874, 2015 WL 4036951, at * 7 (D. Del. July 1, 2015) (quoting *Driessen v. Sony Music Entm't*, No. 2:09-cv-140, 2013 WL 4501063, at *2 (D. Utah Aug. 22, 2013)).

In addition to the court in the *Merck* case, other courts in this district have also held that simply pleading the absence of substantial non-infringing uses is normally sufficient to satisfy the pleading requirement for that element of contributory infringement. *See Univ. of Mass. Med. Sch. v. L'Oreal S.A.*, Civil Action No. 17-868, 2018 WL 5919745, at *8 (D. Del. Nov. 13, 2018)

11

("affirmatively pleading the absence of substantial non-infringing uses renders the claim plausible if the pleadings do not undermine that allegation"); *Rhodes Pharms.  L.P. v. Indivior, Inc.*, Civil Action No. 16-1308, 2018 WL 326405, at *9 (D. Del. Jan. 8, 2018) ("A simple allegation that the product at issue is not suitable for substantial non-infringing use is generally sufficient to satisfy the pleading requirements of *Twombly* and *Iqbal*."); *Courtesy Prods., L.L.C. v. Hamilton Beach Brands*, 73 F. Supp. 3d 435, 441 (D. Del. 2014) ("Courtesy's summary statements for induced and contributory infringement are facially plausible and provide Hamilton notice of the indirect infringement claims."); *Walker Digital, LLC v. Facebook, Inc.*, 852 F. Supp. 2d 559, 566 (D. Del. 2012) (sufficient for "non-infringing use" element to plead that the accused products "are not staple articles or commodities of commerce suitable for substantial noninfringing use and are especially made and /or adapted for use in infringing" the patent).[3]

In support of its argument that the pleading as to the substantial non-infringing use element of contributory infringement was insufficient, PayPal cites the decision in *Koninklijke Philips N.V. v. ASUSTeK*, Civil Action No. 15-1125, 2016 WL 6246763 (D. Del. Oct. 25, 2016), which held that the plaintiff's complaint was insufficient when it "fail[ed] to plead any facts supporting the conclusory statement that the Accused Devices 'are not stable articles or commodities of commerce suitable for substantial, non-infringing use." *Id.* at *4.  It is possible to distinguish that case on the ground that in this case the detailed allegations in the complaint regarding the PayPal products, which were specially adapted for use in an infringing manner, were sufficient to provide factual support for the allegation that the products do not have any substantial non-infringing uses.

---

[3] PayPal relies on the Federal Circuit's decision in *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323 (Fed. Cir. 2012).  In that case, however, the complaint actually acknowledged that there were non-infringing uses for the accused product, and the court based its decision on its rejection of the plaintiff's legally incorrect theory as to the meaning of the requirement that the product in question have no non-infringing uses.  681 F.3d at 1337–38.

Even apart from any such distinction of the *Philips* case, however, the Court is persuaded to follow the rulings of the numerous cases in this district cited above, and to conclude that the allegations that the accused products had no substantial non-infringing uses were sufficient to survive a motion to dismiss.

PayPal makes a one-sentence argument (Dkt. 9, at 14) that the contributory infringement allegations should be dismissed because the complaint "fails to adequately allege specific intent to infringe." There are two problems with that argument. First, as noted above, the complaint contains allegations of specific intent with regard to the claims of indirect infringement generally, and those allegations are sufficient to avoid dismissal with respect to the post-suit acts of indirect infringement. Second, it is well settled that for contributory infringement, unlike for induced infringement, proof of specific intent is not required. *See Lifetime Indus., Inc. v. Trim-Lok, Inc.*, 869 F.3d 1372, 1379, 1381 (Fed. Cir. 2017) (specific intent required for inducement, but not for contributory infringement: "contributory infringement requires 'only proof of a defendant's *knowledge,* not *intent*, that his activity cause[s] infringement'") (quoting *Hewlett-Packard Co. v. Bausch & Lomb Inc.*, 909 F.2d 1464, 1469 (Fed. Cir. 1990)); *see also Nalco*, 883 F.3d at 1356-57. The factual allegations in the complaint were plainly sufficient to show PayPal's knowledge of the patents and that others were infringing them.

There is a more fundamental problem with the contributory infringement allegations, however. The complaint fails to plead any facts showing what particular conduct by PayPal contributed to the infringement of the patents by others. The allegations of contributory infringement, unlike the allegations of induced infringement, are devoid of factual support, and consist of no more than recitations of the elements of the cause of action. *See* Dkt. No. 1, at ¶ 98, 178, 273 ("Defendant has knowingly contributed to the infringement of . . . and continues to

knowingly contribute to the infringement of . . . one or more claims of the [asserted patents] with specific intent" that others would directly infringe the patents by making and using products that "constitute a material part of the invention and are not staple articles or commodities of commerce suitable for substantial non-infringing use.").

At that level of generality, the allegations of contributory infringement make it impossible "to determine whether [the plaintiff's] claims of contributory infringement were in fact plausible." *In re Bill of Lading*, 681 F.3d at 1337. The complaint does not state how PayPal contributes to the infringement of the asserted patents. Unlike in the case of the allegations of induced infringement, the complaint does not identify any particular conduct by PayPal that contributes to the direct infringement by others, or how it does so. The contributory infringement allegations are thus barebones allegations—what the Supreme Court in *Iqbal* called "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," 556 U.S. at 678, that provide PayPal no notice of anything more than that IOENGINE has asserted a claim of contributory infringement against it.

It may be that in light of the other allegations in the complaint, relatively little would need to be added to satisfy the pleading standard set forth by the Supreme Court in *Twombly* and *Iqbal*. But it is clear that more is required. As things now stand, there is no discernible difference between the contributory infringement pleadings in IOENGINE's complaint and an unelaborated recitation of the elements of the cause of action. *See Iqbal*, 556 U.S. at 678 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'") (quoting *Twombly*, 550 U.S. at 555).

Because the allegations in the complaint with regard to PayPal's post-suit activities are sufficient to state a claim for induced infringement, but not for contributory infringement, the

motion to dismiss the indirect infringement claims will be denied as to the induced infringement allegations, but granted as to the allegations of contributory infringement.

### C. Willful Infringement

Finally, PayPal argues that the complaint fails to allege sufficient facts to support IOENGINE's claim that PayPal has been guilty of willful infringement. PayPal makes two arguments: that it lacked pre-suit knowledge of the patents and therefore cannot be held to have acted willfully during the pre-suit period; and that the complaint contains no factual allegations that, if accepted as true, would show sufficiently egregious conduct to support a finding of willful infringement.

As to the pre-suit issue—the same issue discussed earlier with regard to indirect infringement—the Court concludes that the allegations in the complaint do not support a finding of willfulness, which requires knowledge by the accused infringer that its conduct infringes. *WBIP, LLC v. Kohler Co*., 829 F.3d 1317, 1341 (Fed. Cir. 2016); *see BlackBerry Ltd. v. Nokia Corp.,* Civil Action No. 17-cv-155, 2018 WL 1401330, at *3–4 (D. Del. Mar. 20, 2018); *Evolved Wireless*, 2016 WL 1019667, at *4; *Princeton Dig. Image Corp.*, 2016 WL 6594076, at *11. With respect to the allegations of post-suit willfulness, knowledge is a given and the question is whether the complaint must allege additional facts, beyond knowledge of the patent and continuing infringement despite that knowledge, from which a finder of fact could conclude that the accused infringer's conduct was sufficiently egregious to support a willfulness finding.[4]

---

[4] In a footnote in its reply brief, Dkt. No. 19, at 9 n.2, PayPal argues that the Federal Circuit's decision in *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275 (Fed. Cir. 2017), stands for the proposition that allegations of pre-suit conduct are necessary to state a claim of willful infringement. The Court does not interpret *Mentor Graphics* that way. The passage on which PayPal relies simply states that the date for distinguishing between pre-suit and post-suit conduct is the date of the patentee's affirmative allegation of infringement. 851 F.3d at 1295. In this case, that date was the date of IOENGINE's complaint. Given that PayPal had notice of the

The Court concludes that there is no requirement that the plaintiff plead additional facts, beyond knowledge of the patent or patents, in order for a claim of willful infringement to survive a motion to dismiss. Since the Supreme Court's decision in *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016), courts in this district have held that it is not necessary for the plaintiff to plead that the defendant has engaged in some form of egregious conduct in order to avoid dismissal on the pleadings. *See KOM Software Inc. v. NetApp, Inc.*, Civil Action No. 1:18-cv-160, 2018 WL 6167978, at *3 (D. Del. Nov. 26, 2018); *Univ. of Mass. Med. Sch. v. L'Oreal S.A.*, Civil Action No. 17-868, 2018 WL 5919745, at *8 (D. Del. Nov. 13, 2018); *BioMérieux, S.A. v. Hologic, Inc.*, Civil Action No. 18-21, 2018 WL 4603267, at *6 (D. Del. Sept. 25, 2018); *Align Tech., Inc. v. 3Shape A/S*, 339 F. Supp. 3d 435, 448 (D. Del. 2018); *Genedics, LLC v. Meta Co.*, Civil Action No. 17-1062, 2018 WL 3991474, at *15 (D. Del. Aug. 21, 2018); *Välinge Innovation AB v. Halstead New England Corp.*, 2018 WL 2411218, at *6 (D. Del. May 29, 2018); *Blackberry Ltd.*, 2018 WL 1401330, at *3; *Kyowa Hakka Bio, Co. v. Ajinomoto Co.*, Civil Action No. 17-313, 2018 WL 834583, at *13 (D. Del. Feb. 12, 2018); *Shire ViroPharma Inc. v. CSL Behring LLC*, Civil Action No. 17-414, 2018 WL 326406, at *3 (D. Del. Jan. 8, 2018); *Rhodes Pharms. L.P. v. Indivior, Inc.*, Civil Action No. 16-1308, 2018 WL 326405, at *9 (D. Del. Jan. 8, 2018); *Bayer Healthcare, LLC v. Baxalta, Inc.*, Civil Action No. 16-1122, 2017 U.S. Dist. LEXIS 126904, at *3 (D. Del. Aug. 10, 2017); *Bio-Rad Labs. Inc. v. Thermo Fisher Scientific Inc.*, 267 F. Supp. 3d 499, 501 (D. Del. 2017); *DermaFocus LLC v. Ultera, Inc.*, 201 F. Supp. 3d 465, 473 (D. Del. 2016).[5]

---

patents and the allegations of the infringement as of that date, there is no reason it should not be answerable for willful infringement after that date if IOENGINE can prove the requisite level of culpable behavior during the post-suit period. *See Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1932 (2016).

[5] PayPal cites only one post-*Halo* decision from this district holding that it was necessary to plead egregious conduct in order to survive a motion to dismiss a willfulness claim, *Varian Med. Sys., Inc. v. Elekta AB*, Civil Action No. 15-871, 2016 WL 3748772, at *8 (D. Del. July 12, 2016).

The facts bearing on willfulness are likely to be, in large measure, in the possession of the defendant and available to the plaintiff only through discovery.  If discovery fails to produce facts that would support a finding of willfulness, the defendant can seek to have the willfulness allegations dismissed on summary judgment.  For pleading  purposes, however, the Court is satisfied that IOENGINE has made sufficient allegations of willfulness as to the post-suit period.  The Court therefore denies PayPal's motion to dismiss IOENGINE's allegations that PayPal willfully infringed the asserted patents.

## II.  INGENICO'S MOTION TO DISMISS

One of the counterclaim defendants, Ingenico Group S.A. (referred to herein as "Ingenico France"), is a French corporation, which maintains its principal place of business in France.  Counterclaim defendant Ingenico Corp. is a Georgia corporation; it is a holding company that is a wholly owned U.S. subsidiary of Ingenico France.  Counterclaim defendant Ingenico Inc. is a Delaware corporation; it is an operating company that is a wholly owned subsidiary of Ingenico Corp.

The Ingenico defendants have moved to dismiss the complaint on two grounds: (1) under Fed. R. Civ. P. 12(b)(2), they contend that the Court lacks personal jurisdiction over Ingenico France; and (2) they contend that IOENGINE's counterclaims lump the three Ingenico defendants together, without distinguishing among them as to the allegedly infringing conduct, thus depriving each of them of notice as to what they are specifically charged with.  A third issue, involving the adequacy of the service on Ingenico France, has been resolved.

---

The author of the opinion in that case has since stated that he now believes that there should be no such requirement in order to successfully plead willfulness.  *See Välinge*, 2018 WL 2411218, at *6.

## A. Jurisdiction as to Ingenico France

The Ingenico defendants concede that the Court has personal jurisdiction over Ingenico Corp. and Ingenico Inc. They contend, however, that personal jurisdiction is lacking as to Ingenico France.

### 1. Background

The defendants argue that Ingenico France has no significant contacts with the forum and thus the forum lacks general jurisdiction over Ingenico France. IOENGINE does not contest the defendants' assertion that general jurisdiction is lacking, but contends that the facts support the Court's exercise of specific jurisdiction over Ingenico France. In particular, IOENGINE argues that the Court has jurisdiction over Ingenico France under an agency theory. *See Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1379 (Fed. Cir. 2015); *Phoenix Canada Oil Co. v. Texaco, Inc.*, 842 F.2d 1466, 1477 (3d Cir. 1988); *Rovi Corp. v. Haier Grp. Corp.*, Civil Action No. 11-1140, 2013 WL 4534641, at *3 (D. Del. Aug. 23, 2013); *Applied Biosystems, Inc. v. Cruachem, Ltd.*, 772 F. Supp. 1458, 1463 (D. Del. Sept. 6, 1991); *Sears, Roebuck & Co. v. Sears plc*, 744 F. Supp. 1297, 1305 (D. Del. 1990). IOENGINE argues that Ingenico France's U.S. subsidiaries are agents of Ingenico France, and that the Court can therefore exercise *in personam* jurisdiction over Ingenico France.

IOENGINE points to a number of facts in support of its contention that there is a close relationship among the related corporations, from which an agency relationship can be inferred. IOENGINE points out that in the Registration Documents filed with French regulators, Ingenico France uses the term "Ingenico Group" to refer to the group consisting of Ingenico France and all of its subsidiaries, including Ingenico Inc. and Ingenico Corp. Throughout those documents and elsewhere, Ingenico France describes the business of the Ingenico Group as a single unified

enterprise. No. 1:18-cv-826, Dkt. No. 33, at 3–4. IOENGINE further asserts that the leadership of Ingenico France "is intimately intertwined with that of Ingenico Corp. and Ingenico Inc.": The Chairman and Chief Executive Officer of Ingenico France served on the Board of Ingenico Inc. and recently served as the Chief Executive Officer and Chief Financial Officer of Ingenico Corp. In addition, the current Chief Executive Officer of both Ingenico Corp. and Ingenico Inc. also serves as an Executive Vice President for Ingenico France. Ingenico France's current Executive Vice President for North America works at Ingenico Inc. in Atlanta and oversees the Ingenico Group's North American operations. Ingenico France's Chief Financial Officer sits on the Board of Ingenico Corp. and Ingenico Inc. And each of those individuals serves on the Executive Committee of the Ingenico Group. *Id.* at 5–6.

IOENGINE further alleges that Ingenico France controls the supply chain for the accused products, from their manufacture to their eventual sale, and coordinates the global marketing of the products. *Id.* at 6–7. Moreover, IOENGINE asserts that Ingenico France compiles and reports consolidated financial statements for all operations within the Ingenico Group and that Ingenico France "controls the day-to-day operation of its subsidiaries by directly evaluating the financial performance of individual subsidiaries and setting targets," and "oversees hiring activities of all group members through its policies for hiring, training, and career development for all employees." *Id.* at 7–9.

In challenging the Court's jurisdiction over Ingenico France, the Ingenico defendants have recited a list of factors that they contend show that Ingenico France's U.S. subsidiaries are independent of, and not agents of, Ingenico France. They assert that Ingenico France and its U.S. subsidiaries maintain their own books and records and prepare their own financial statements; each entity, they note, is responsible for its own business activity, revenue, hiring, payroll, and budget.

Dkt. No. 27, at 3. Although the defendants acknowledge that Ingenico France supervises the business of Ingenico Inc. through financial reporting and Ingenico Inc.'s issuance of periodic management reports detailing its activities, they contend that Ingenico France does not direct, or have the authority to direct, the day-to-day operations of its U.S. subsidiaries. *Id.* The defendants represent that no members of Ingenico France's board of directors sit on the boards of the U.S. subsidiaries and only one officer of Ingenico France sits on the boards of those subsidiaries. *Id.* Finally, the defendants note that the subsidiaries maintain their own offices and their own production, research, sales, and distribution facilities in the United States, which are separate from the operations of Ingenico France. *Id.*

### 2. Legal Standards

When personal jurisdiction is disputed at the pleading stage, and in the absence of jurisdictional discovery, the plaintiff must make a *prima facie* showing that the court has personal jurisdiction in order to defeat a motion to dismiss. *See Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010). Such a showing requires that the plaintiff establish that jurisdiction exists "with reasonable particularity," *Nespresso USA, Inc. v. Ethical Coffee Co. SA*, 263 F. Supp. 3d 498, 502 (D. Del. 2017); in assessing the strength of the plaintiff's showing, the court will accept the uncontroverted allegations in the complaint as true and resolve any factual conflicts in the plaintiff's favor. *Elecs. For Imaging, Inc. v. Coyle*, 340 F.3d 1344, 1349 (Fed. Cir. 2003).

In cases in which *in personam* jurisdiction is challenged, the Third Circuit has held that jurisdictional discovery should be "freely permitted." *Renner v. Lanard Toys Ltd.*, 33 F.3d 277,

283 (3d Cir. 1994).[6] While jurisdictional discovery is not automatically granted and generally requires some evidence supporting the existence of personal jurisdiction, *see Hansen v. Neumueller GmbH*, 163 F.R.D. 471, 473, (D. Del. 1995), the Third Circuit has held that jurisdictional discovery should be permitted if the plaintiff's jurisdictional allegations are not "clearly frivolous." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 456 (3d Cir. 2003); *Mass. School of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997); *Compagnie des Bauxites de Guinee v. L'Union Atlantique S.A. D'Assurances*, 723 F.2d 357, 362 (3d Cir. 1983); *see also Pfizer Inc. v. Mylan Inc.*, 201 F. Supp. 3d 483, 490 (D. Del. 2016).

In order to establish *in personam* jurisdiction on an agency theory as to a corporate parent of a subsidiary over which the court has jurisdiction, the plaintiff must show more than the normal relationship between a parent and subsidiary. As the Supreme Court has noted, "It is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation (so-called because of control through ownership of another corporation's stock) is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (quotation omitted). Parent corporations frequently exercise financial supervision over their subsidiaries, and there is often some overlap in management personnel and some general policy guidance exercised by the parent over the subsidiary. The presence of those factors is typically insufficient to convert the subsidiary into an agent of the parent for purposes of exercising *in personam* jurisdiction over the parent. *See Nespresso,* 263 F. Supp. 3d at 505; *Energy Marine Servs., Inc. v. DB Mobility Logistics AG*, No. 15-24, 2016 WL 284432, at *4 (D. Del. Jan. 22, 2016). The question for the

---

[6] Although the Federal Circuit has held that jurisdictional issues in patent cases are to be decided in accordance with Federal Circuit law, it has held that the question whether jurisdictional discovery should be allowed is governed by regional circuit law, which in this case is the law of the Third Circuit. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016, 1021 (Fed. Cir. 2009).

court to resolve in such cases is whether the relationship between the parent and the subsidiary is closer than is typically the case, such that the control over and direction of the subsidiary's activities by the parent, at least with respect to the transaction at issue, is sufficient to render the relationship one of principal and agent.

### 3. Application of Legal Standards to This Case

As noted, several of the factors that IOENGINE has recited in response to the motion to dismiss the claims against Ingenico France are commonplace in relationships between parent and subsidiary corporations, such as financial supervision by the parent and some overlap in management personnel and directors. Those factors are not sufficient, standing alone, to create an agency relationship between Ingenico France and its U.S. subsidiaries or to indicate that Ingenico France is directly responsible for the acts of alleged infringement in its own right. *See Telcordia Techs., Inc. v. Alcatel S.A.*, No. 04-874, 2005 WL 1268061, at *3 (D. Del. May 27, 2005) ("minor overlap" in the governing personnel of the corporations "may not serve to expose the parent corporation to liability for its subsidiary's acts"). The Court also attaches little weight to statements made by Ingenico France in its Registration Documents, in which it referred to the parent corporation and the subsidiaries collectively as the Ingenico Group and repeatedly referred to the activities of the Ingenico family of corporations collectively, as activities of the Ingenico Group. Again, that mode of characterizing a related group of companies is common, even when the companies maintain a separate legal status and are not deemed to be in a principal-agent relationship. *See MacQueen v. Union Carbide Corp.*, No. 13-831, 2014 WL 6809811, at * 7 (D. Del. Dec. 3, 2014); *see also In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 570–71 (M.D. Pa. 2009); *Action Mfg. Co. v. Simon Wrecking Co.*, 375 F. Supp. 2d 411, 423–24 (E.D. Pa. 2005).

IOENGINE's jurisdictional allegations, however, go farther than that. IOENGINE asserts that Ingenico France exercises close supervisory control over the day-to-day operations of its U.S. operating company, Ingenico Inc., including involvement in contracting for the assembly of the accused products. Dkt. No. 33, at 15.[7] While the evidence at this stage is not sufficient to justify a conclusion that the Court may exercise *in personam* jurisdiction over Ingenico France, the Court is persuaded that IOENGINE's jurisdictional claim is not "clearly frivolous," and that IOENGINE should therefore be granted the opportunity to take discovery in support of its jurisdictional argument. *See Pfizer Inc.*, 201 F. Supp. 3d at 490 ("Plaintiffs have not produced information that Mylan Inc. and Mylan N.V. directed MLL's action. However, more information regarding Mylan Inc.'s and Mylan N.V.'s role could provide the necessary evidence, and plaintiffs have demonstrated that the allegations are not 'clearly frivolous.'").

Accordingly, IOENGINE will be permitted to take discovery on the issue of *in personam* jurisdiction as to Ingenico France. That discovery should be narrowly tailored to the jurisdictional issue by focusing on the degree of control exercised by Ingenico France over its U.S. subsidiaries, Ingenico Corp. and Ingenico Inc., both in general and with respect to the conduct at issue in this case, and on any involvement by Ingenico France in the acts of alleged infringement.

Jurisdictional discovery will close on June 3, 2019. Thereafter, the defendants may renew their motion to dismiss Ingenico France as a defendant, by so advising the Court by June 10, 2019,

---

[7] That assertion is subject to question, as the supporting evidence in IOENGINE's brief appears to refer to "Ingenico Group" (the term used for the collective group of Ingenico corporations) rather than Ingenico Group S.A., i.e., Ingenico France. See Dkt. No. 34-1, at 5, 22, 29. However, at the December 17, 2018, hearing and in a supplemental filing submitted subsequently, IOENGINE pointed to additional evidence that, characterized generally, suggests that Ingenico France is significantly involved in the creation of the accused products that are marketed by the U.S. operating subsidiary. That evidence is subject to the Court's protective order, so the Court will not describe it in detail.

of their intention to do so.  IOENGINE will then be allowed to supplement its response to the defendants' motion to dismiss Ingenico France.  That supplemental response will be no more than 15 pages in length and will be due for filing by June 17, 2019.  The defendants will be permitted to file a reply to that supplemental response, no more than 15 pages in length, within 14 days of the filing of IOENGINE's supplemental response.

## B.  Failure to Distinguish Among the Defendants

Ingenico argues that the counterclaims "lump" the three counterclaim defendants together and fail to distinguish among them with regard to the particular infringing actions committed by each.  As a result, Ingenico argues, the defendants are denied notice as to the particular acts each is alleged to have committed as part of the charged infringement.  IOENGINE argues that the counterclaims, which allege that the defendants have committed each of the infringing acts "individually and collectively," provides sufficient notice to survive a motion to dismiss.

The counterclaims allege that each of the defendants is responsible for each of the alleged infringing acts.  Courts in this district have held that to be sufficient to avoid a dismissal.  As Chief Judge Stark wrote recently in rejecting an argument similar to Ingenico's, "[the plaintiff] is alleging that both of the Defendants did everything. . . .  The allegations must at this stage, be taken as true.  Time will tell if the plaintiff can prove them."  *Align Tech., Inc. v. 3Shape A/*S, 339 F. Supp. 3d 435, 447 (D. Del. 2018); *see also Groove Digital, Inc. v. King.com, Ltd.*, Civil Action No. 1:18-cv-836, 2018 WL  6168615, at *1 (D. Del. Nov. 26, 2018) ("[A] complaint that collectively refers to defendants meets Rule 8's pleading standard if 'it can be reasonably inferred that each and every allegation is made against each individual defendant.'") (quoting *Zond, Inc. v. Fujitsu Semiconductor Ltd.*, 990 F. Supp. 2d 50, 53–54 (D. Mass. 2014)).  In this case, the counterclaims, which allege that the defendants "individually and collectively" committed each of

the accused infringing acts, effectively allege that the defendants all "did everything," as was the case in the *Align* and *Groove Digital* cases.

Ingenico relies on a separate line of cases in which courts in this district have dismissed complaints when the plaintiff "failed to identify which entity is responsible for any particular alleged infringing activity," *N. Star Innovations, Inc. v. Toshiba Corp.*, Civil Action No. 16-115, 2016 WL 7107230, at *2 (D. Del. Dec. 6, 2016), and when the plaintiff did not "identify which particular defendant or defendants are responsible for which allegedly infringing products, process or method," *M2M Solutions LLC v. Telit Commc'ns PLC*, Civil Action No. 14-1103, 2015 WL 4640400, at *3 (D. Del. Aug. 5, 2015). *See also Promos Techs., Inc. v. Samsung Elecs. Co.*, Civil Action No. 18-307, 2018 WL 5630585, at *3 (D. Del. Oct. 31, 2018) (a complaint may be structured to refer to all named defendants collectively within a count, but to do so, "a Count must incorporate previous allegations of the Complaint identifying the specific infringing acts of the individual defendants"); *T-Jat Sys. 2006 Ltd. v. Expedia, Inc.*, Civil Action No. 16-581, 2017 WL 896988, at *7 (D. Del. Mar. 7, 2017) ("T-Jat does not incorporate preceding paragraphs in its allegations against Defendants" and the complaint fails to "clarify that each defendant committed at least one infringing act."); *Mayne Pharma Int'l PTY Ltd. v. Merck & Co.*, Civil Action No. 15-438, 2015 WL 7833206, at *4 (D. Del. Dec. 3, 2015) (complaint against foreign subsidiary of two other defendants held insufficient, because an allegation that the foreign subsidiary "manufactured" the accused product is not an allegation of infringement in this country); *Neology, Inc. v. Kapsch Trafficom IVHS, Inc.*, Civil Action No. 13-2052, 2014 WL 4675316, at *4 (D. Del. Sept. 19, 2014) (complaint insufficient to plead pre-suit knowledge of the asserted patents by making a "blanket reference to all 'Defendants' generically as having 'indirectly infringed the

[Asserted Patents] by actively and intentionally inducing their customers to infringe the [Asserted Patents.]'").

There is some tension between these two lines of cases. Several of the cases can be reconciled based on factual distinctions between them. Besides alleging that the three Ingenico defendants committed each of the alleged infringing acts "individually and collectively," Dkt. No. 12, at ¶ 279, the counterclaims also set forth the parent and subsidiary relationships among the three defendants. *Id.* at ¶¶ 276–78. Based on that relationship, it is clear that IOENGINE's allegations of individual and collective liability for all three defendants are predicated at least in part an agency theory, the same agency theory on which IOENGINE bases its assertion that this Court has *in personam* jurisdiction over Ingenico France. The fact that IOENGINE's counterclaims pleaded that the defendants were each individually liable for all of the alleged infringement distinguishes the *T-Jat* and *Neology* cases, and the fact that the foreign corporation in *Mayne* was a subsidiary of the domestic corporations, while the foreign corporation in this case was the parent—and thus more amenable to possible liability on an agency theory—is sufficient to distinguish the *Mayne* case. With that said, however, there remains what appears to be a split of authority among several decisions in this jurisdiction—the *Align* and *Groove Digital* cases on one side and the *North Star Innovations*, *M2M Solutions*, *and Promo Technologies* cases on the other. The Court concludes that, on the facts of this case, the recent decisions in the *Align* and *Groove Digital* cases are more persuasive. The Court therefore denies the Ingenico defendants' motion to dismiss based on their contention that the counterclaims failed to distinguish among the defendants with respect to the allegations of infringement.

IT IS SO ORDERED.

SIGNED this 25th day of January, 2019.


_____
WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE