**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| INGENICO INC., | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | Civil Action No. 18-826-WCB |
| IOENGINE, LLC, | § | |
| | § | |
| *Defendant.* | § | |
| | § | |
| | § | |

_____

| | |
|---|---|
| IOENGINE, LLC, | § |
| | § |
| *Counterclaim Plaintiff,* | § |
| | § |
| v. | § |
| | § |
| INGENICO INC., | § |
| INGENICO CORP., and | § |
| INGENICO GROUP S.A., | § |
| | § |
| *Counterclaim Defendants.* | § |

_____

## <u>MEMORANDUM OPINION AND ORDER</u>

The Ingenico parties (plaintiff and counterclaim defendant Ingenico Inc. and counterclaim defendants Ingenico Corp. and Ingenico Group S.A. (collectively "Ingenico")) have filed a motion seeking a letter of request for international judicial assistance.  Dkt. No. 181 (redacted version of Dkt. No. 176).  Specifically, Ingenico asks this court to issue a letter of request to the Administrator of Courts for Israel under Article I of the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters in order to serve a request for documents and oral testimony upon two individuals who Ingenico believes reside in Israel.  Dkt. Nos. 181, 181-2.

1

"The Hague Evidence Convention serves as an alternative or 'permissive' route to the Federal Rules of Civil Procedure for the taking of evidence abroad from litigants and third parties alike." *Tulip Computs. Int'l B.V. v. Dell Comput. Corp.*, 254 F. Supp. 2d 469, 472 (D. Del. 2003) (citing *Societe Nationale Industrielle Aerospatiale v. United States Dist. Court for the Southern Dist. of Iowa*, 482 U.S. 522, 538 (1987)). "The Convention allows judicial authorities in one signatory country to obtain evidence located in another signatory country 'for use in judicial proceedings, commenced or contemplated.'" *Tulip*, 254 F. Supp. 2d at 472 (quoting Hague Evidence Convention, Art. 1, T.I.A.S. No. 7444, reprinted at 28 U.S.C. § 1781). The United States and the Nation of Israel are both signatories to the Convention. *See* T.I.A.S. No. 6638 (Feb. 10, 1969).

There are multiple methods of taking evidence pursuant to the Convention. *Tulip*, 254 F. Supp. 2d at 472. Ingenico avails itself of the "letter rogatory" method, in which a U.S. judicial authority sends a letter of request to the competent authority in the foreign state. *See id.*; Fed. R. Civ. P. 28(b); *see also* Dkt. No. 181-2.

A party seeking application of the Hague Evidence Convention bears the burden of persuading the trial court of the necessity of permitting discovery pursuant to the Hague Convention. *Pronova BioPharma Norge AS v. Teva Pharm. USA, Inc.*, 708 F. Supp. 2d 450, 452 (D. Del. 2010). While that burden is not great,[1] district courts have discretion to deny a request for

---

[1] Ingenico asserts that when discovery is sought from a non-party in a foreign jurisdiction, application of the Hague Evidence Convention is "virtually compulsory." Dkt. No. 181, p. 4 (purportedly quoting *Aerospatiale*, 482 U.S. at 546). Later on in its motion, Ingenico repeats that assertion and again attributes the quoted language to the Supreme Court: "Further, these factors mirror those (discovery sought from a non-party in a foreign jurisdiction) that prompted the Supreme Court to state that application of the Hague Evidence Convention is 'virtually compulsory.' *Aerospatiale*, 482 U.S. at 546." Dkt. No. 181, p. 4. The Supreme Court did not, however, make such a statement—the language quoted by Ingenico comes from a decision of an intermediate appellate court in New York State, *Orlich v. Helm Bros.*, 560 N.Y.S.2d 10, 14 (App.

letters rogatory if there is a "good reason" for doing so. *In re Complaint of Bankers Tr. Co.*, 752 F.2d 874, 890 (3d Cir. 1984). "In entertaining a request of letter pursuant to the Hague Convention, '[t]he exact line between reasonableness and unreasonableness in each case must be drawn by the trial court, based on its knowledge of the case and of the claims and interests of the parties and the governments whose statutes and policies they invoke.'" *Purdue Pharma Prods. L.P. v. Par Pharm., Inc.*, No. CIV.A.07-255, 2008 WL 3926158, at *1 (D. Del. Aug. 26, 2008) (quoting *Aerospatiale*, 482 U.S. at 546).

The Supreme Court has cautioned that district courts "should exercise special vigilance to protect foreign litigants from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position." *Aerospatiale*, 482 U.S. at 546. In *Aerospatiale*, the district court had jurisdiction over the party against which discovery was sought, and thus discovery under the Federal Rules was available. *Id.* at 541–42. However, courts have looked to the Supreme Court's cautionary language in *Aerospatiale* even when deciding requests for letters rogatory targeted at foreign parties over which there is no federal jurisdiction. *See, e.g.*, *Lantheus Med. Imaging, Inc. v. Zurich Am. Ins. Co.*, 841 F. Supp. 2d 769, 772, 792 (S.D.N.Y. 2012); *Seoul Semiconductor Co. v. Nichia Corp.*, 590 F. Supp. 2d 832, 834 (E.D. Tex. 2008); *Advanced Indus. Prods., S.C.S v. Alcoa Glob. Fasteners, Inc.*, No. CV 04-3049, 2006 WL 8433934, at *2 (C.D. Cal. Feb. 1, 2006).

More specifically, courts have adopted the Supreme Court's five-factor test for whether a foreign discovery request gives due respect to international comity: (1) the importance to the

---

Div. 1990). Moreover, that statement in the *Orlich* case, which was cited in the *Tulip Computers* case from this district, was made in the context of explaining that it was virtually compulsory for parties to use the Hague Convention to obtain overseas evidence from non-parties rather than other forms of discovery, not to suggest that issuance of letters rogatory by a district court is virtually compulsory upon request.

litigation of the documents or other information requested, (2) the degree of specificity of the request, (3) whether the information originated in the United States, (4) the availability of alternative means of securing the information, and (5) the extent to which noncompliance with the request would undermine important interests of the United States, or compliance with the request would undermine important interests of the state where the information is located.[2]  *See, e.g.*, *Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, No. CV 12-3289, 2013 WL 12203112, at *2–4 (D.N.J. June 7, 2013); *Lantheus*, 841 F. Supp. 2d at 792–95; *Seoul Semiconductor*, 590 F. Supp. 2d at 834–36; *see also Purdue Pharma*, 2008 WL 3926158, at *1–3 (not mentioning the five-factor test but denying defendants' application for issuance of a letter of judicial assistance on the grounds that there were alternative means to secure some of the requested information and that the remaining discovery requests were "insufficiently relevant to the present action").  That five-factor test requires a particularized analysis of the facts of a case, the sovereign interests involved, and the likelihood that resorting to the Hague Convention will prove effective.  *Aerospatiale*, 482 U.S. at 544.

Ingenico seeks documents and oral testimony from two individuals who Ingenico asserts reside in Israel, Messrs. Gidon Elazar and Daniel Harkabi.  Dkt. Nos. 181, 181-2.  Ingenico provides a 2019 Securities and Exchange Commission filing from a company associated with those individuals in which the company represented that the two individuals reside in Israel.  *See* Dkt. No. 182-1, p. 12 (redacting the specific addresses).  Defendant and counterclaim plaintiff IOENGINE, LLC, neither confirms nor denies Ingenico's assertion that the individuals reside in

---

[2]  The Court derived its five-factor test from a draft of the Restatement of Foreign Relations Law of the United States (Revised) § 437(1)(c) (Tent. Draft Nov. 7, 1986).  *Aerospatiale*, 482 U.S. 522, 544 n.28.  Subsequent to the Court's decision, an identical test was incorporated into the Fourth Restatement of Foreign Relations Law.  *See* Restatement (Fourth) of Foreign Relations Law § 426 cmt. a (2018).

Israel.  In a prior case, another district court mentioned that at least one of the individuals, Mr. Elazar, moved from California to Israel sometime before 2007.  *See Harkabi v. SanDisk Corp.*, 891 F. Supp. 2d 527, 531, 543 (S.D.N.Y. 2012) (noting that Messrs. "Harkabi and Elazar relocated with their families from Israel to California" sometime after July 2004, but that as of June 2007, "[Mr.] Elazar was living in Israel").  I find no reason to doubt Ingenico's assertion that the two individuals currently reside in Israel.

   As private individuals residing in Israel, Messrs. Harkabi and Elazar are beyond this court's jurisdiction, and they do not have representatives in the United States through which Ingenico could contact.  *Compare* Dkt. No. 181, p. 2, *with Cywee Grp. Ltd. v. Huawei Device Co.*, No. 2:17-CV-495, 2018 WL 4100763, at *3 (E.D. Tex. July 13, 2018) (denying defendants' request for issuance of a letter of assistance after noting, *inter alia*, that the subject of the letter had a corporate affiliate located in the U.S.).  Furthermore, counsel for Ingenico have attempted to contact the two individuals by email, but the individuals have not responded.  *See* Dkt. No. 182-1, pp. 8–9.  I find, therefore, that Ingenico has satisfied the fourth factor of the *Aerospatiale* test, i.e., establishing the unavailability of alternative means of securing the information.

   I also find that Ingenico has satisfied the fifth *Aerospatiale* factor regarding the extent to which noncompliance with the request would undermine important interests of the United States, or compliance would undermine important interests of Israel.  After reading Ingenico's discovery requests, Dkt. No. 181-2, pp. 6–12, I can discern no reason why Ingenico's requests would be contrary to Israeli law.  Moreover, IOENGINE does not oppose Ingenico's discovery requests.  *See* Dkt. No. 180.  To the extent that Ingenico's discovery requests call for communications that may be privileged under Israeli law, Ingenico has excepted such material from its requests.  *See* Dkt. No.

181-2, p. 8.  I also note that preventing the requested discovery would undermine Ingenico's important interests in developing its claims and defenses in this case.

Despite holding that factors four and five favor granting Ingenico's request, I find that Ingenico has not met its burden of establishing that its request for judicial assistance is reasonable with respect to the first, second, and third factors of the *Aerospatiale* test.  As to the first factor—the importance of the requested documents or other information to the litigation—Ingenico makes the conclusory assertions that "[t]he relevance [of the requested evidence] is clear"; the requested discovery is "pertinent to [Ingenico's] claims and defenses" and the evidence that is sought "go[es] right to the heart of the pending litigation – the manner by which IOENGINE reduced its asserted invention to practice."  Dkt. No. 181, pp. 2, 4.  Those assertions are insufficient.  While it may be undisputed that Messrs. Harkabi and Elazar had some involvement in reducing to practice the asserted inventions recited in U.S. Patent Nos. 9,059,969 and 9,774,703, Ingenico does not make clear why additional information regarding those individuals' involvement in reducing the asserted inventions to practice is relevant to its claims or defenses in this case.  More detail is needed from Ingenico on that issue.

Likewise, for the third factor—whether the information originated in the United States—Ingenico fails to point to evidence sufficient to support its request.  Based on information received in IOENGINE's interrogatory responses, Ingenico asserts that Messrs. Harkabi and Elazar collaborated in the early 2000s with the inventor of the asserted patents, Mr. Scott McNulty.  Ingenico does not, however, attempt to explain where this collaboration occurred or where the requested documents may have originated.  Depending on where the collaboration occurred and where the documents originated, Messrs. Harkabi and Elazar may be able to assert unique evidentiary privileges under the originating state's laws, and such a fact might weigh against

granting Ingenico's request for letters rogatory.  *See Dyson, Inc. v. SharkNinja Operating LLC*, No. 1:14-CV-0779, 2016 WL 5720702, at *3 (N.D. Ill. Sept. 30, 2016) ("Finally, the information did not originate in the United States, and this factor weighs against issuing the Letters Rogatory."); *see also Luminati Networks Ltd. v. Teso LT, UAB*, No. 2:19-CV-00395, 2020 WL 6815153, at *1 (E.D. Tex. Oct. 28, 2020) (finding that the third factor favored granting the request for letters rogatory because the subject of the letters "would be expected to testify on topics including Plaintiff's U.S. patents, its U.S. patent infringement suits, its business dealings in the U.S., and its monitoring of Defendants' U.S. business").

Beyond the weakness of Ingenico's showings in its motion as to the first and third factors, I find that one of Ingenico's discovery requests is overly broad:  Ingenico's first document request asks for "[a]ll documents and things relating to Scott McNulty or Lori McNulty, and any entities now or once affiliated with them . . . or their agents or representatives."  Dkt. No. 181-2, p. 10.  As noted above, Ingenico's conclusory assertion that the "relevance [of the discovery requests] is clear" is insufficient to justify such a sweeping document request.  I therefore conclude that Ingenico's request fails the second factor in *Aerospatiale*'s five-factor test, which addresses the specificity of the request.

Based on a weighing of the five factors and a particularized analysis of the facts in this case, I conclude that Ingenico has not carried its burden of demonstrating the necessity and reasonableness of permitting discovery pursuant to the Hague Convention.  Ingenico's motion is therefore denied without prejudice to its renewal upon a sufficient presentation.

If Ingenico seeks to renew its motion, it should explain, with specificity, why the requested discovery is important to this litigation.  In addition, Ingenico should clarify whether the information originated in the United States.  Finally, Ingenico should narrow the scope of its first

7

document request or, alternatively, show with specificity why that request cannot reasonably be narrowed or why that request is not as burdensome as it appears to be on its face.

IT IS SO ORDERED.

SIGNED this 26th day of February, 2021.


WILLIAM C. BRYSON
UNITED STATES CIRCUIT JUDGE